J-A05008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: PETITION OF M.R.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ALLEGHENY COUNTY DEPARTMENT | : | |
| OF BEHAVIORAL HEALTH AND THE | : | |
| PENNSYLVANIA STATE POLICE | : | |
| | : | |
| | : | |
| APPEAL OF: M.R.C. | : | No. 903 WDA 2018 |

Appeal from the Order May 21, 2018
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  CC No. 638 of 2016

BEFORE:  GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY GANTMAN, P.J.E.:                    **FILED APRIL 26, 2019**

Appellant, M.R.C., appeals from the order entered in the Allegheny County Court of Common Pleas, which denied his petition to expunge the record of his involuntary mental health commitment under the Mental Health Procedures Act ("MHPA").[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts of this case.  Therefore, we have no need to restate them.  Procedurally, on December 14, 2017, Appellant filed a petition to expunge his involuntary commitment under the MHPA.  The court conducted a hearing on Appellant's petition on May 14, 2018, during which the court heard testimony from Appellant and VonZell Wade, PhD, LPC, Appellant's counselor.  The court

_____

[1] 50 P.S. §§ 7101-7503.

denied Appellant's petition in an order dated May 17, 2018, and entered on May 21, 2018. Appellant filed a timely notice of appeal on June 19, 2018, and a timely concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review:

> DID THE [TRIAL] COURT COMMIT REVERSIBLE ERROR WHEN IT OVERRULED APPELLANT'S OBJECTIONS ON THE BASIS OF VIOLATIONS OF THE RULE AGAINST HEARSAY, ADMITTED THE EVIDENCE WHICH WAS THE SUBJECT OF THE OBJECTIONS, AND THEN BASED ITS DECISION ON IMPROPERLY ADMITTED HEARSAY?
>
> DID THE [TRIAL] COURT COMMIT REVERSIBLE ERROR WHEN IN ITS OPINION THE COURT EVALUATED THE EMERGENCY INVOLUNTARY EXAMINATION OF APPELLANT BASED UPON THE COURT'S MISINTERPRETATION OF THE MHPA'S REQUIREMENTS AND THEN DECIDED THAT THE EMERGENCY INVOLUNTARY EXAMINATION JUSTIFIED TREATMENT BASED UPON THE COURT'S ERRONEOUS INTERPRETATION OF LAW?
>
> DID THE [TRIAL] COURT COMMIT REVERSIBLE ERROR WHEN IT FAILED TO HOLD THAT THE INVOLUNTARY EMERGENCY EXAMINATION AND TREATMENT OF APPELLANT FAILED TO COMPLY WITH THE EXPLICIT PROCEDURAL MANDATES AND DUE PROCESS PROTECTIONS INCLUDED WITHIN THE PENNSYLVANIA MENTAL HEALTH PROCEDURES ACT AND THEREFORE THE INVOLUNTARY EMERGENCY EXAMINATION AND TREATMENT WAS INVALID, AND ILLEGAL, AND WAS A VIOLATION OF [APPELLANT]'S RIGHTS TO DUE PROCESS OF LAW, VOID *AB INITIO* AND SHOULD BE DECLARED NULL AND VOID AND SHOULD BE VACATED AND ANY AND ALL RECORDS THEREOF EXPUNGED?
>
> DID THE [TRIAL] COURT COMMIT REVERSIBLE ERROR WHEN IT FAILED TO HOLD THAT THE SECTION 302 EXAMINATION AND TREATMENT OF APPELLANT WAS INVALID DUE TO THE EXAMINING PHYSICIAN'S FAILING TO

J-A05008-19

> MAKE A DIAGNOSIS OF MENTAL ILLNESS WITHIN THE EXAMINING PHYSICIAN'S FINDINGS OR STATEMENT OF TREATMENT NEEDED?
>
> DID THE [TRIAL] COURT COMMIT REVERSIBLE ERROR WHEN IT FAILED TO HOLD THAT THE SECTION 302 EMERGENCY EXAMINATION AND TREATMENT OF APPELLANT WAS UNLAWFUL AND INVALID BECAUSE [APPELLANT] WAS NOT A STATUTORILY AUTHORIZED SUBJECT FOR EMERGENCY INVOLUNTARY EXAMINATION AND TREATMENT PURSUANT TO THE PENNSYLVANIA MENTAL HEALTH PROCEDURES ACT BECAUSE [APPELLANT] WAS NOT MENTALLY ILL BUT RATHER WAS EXPERIENCING THE SYMPTOMS OF ALCOHOL WITHDRAWAL?

(Appellant's Brief at 2-3).[2]

Our review of this appeal implicates the following principles: "Our well-settled standard of review in cases involving a motion for expunction is whether the trial court abused its discretion." *In re Keyes*, 83 A.3d 1016, 1022 (Pa.Super. 2013), *appeal denied*, 627 Pa. 766, 101 A.3d 104 (2014) (citing *Commonwealth v. A.M.R.*, 887 A.2d 1266, 1268 (Pa.Super. 2005)).

Sections 7301 and 7302 of the MHPA deal with involuntary emergency

---

[2] "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Issues not raised in a Rule 1925 concise statement of errors will likewise be deemed waived. *Linde v. Linde Enterprises, Inc.*, 118 A.3d 422, 430 (Pa.Super. 2015), *appeal denied*, 634 Pa. 736, 129 A.3d 1243 (2015) (citing Pa.R.A.P. 1925(b)(4)(vii)). "Rule 1925(b) waivers may be raised by the appellate court *sua sponte*." *Commonwealth v. Hill*, 609 Pa. 410, 427, 16 A.3d 484, 494 (2011). If a concise statement is too vague, the court may find waiver and disregard any argument. *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007). Here, Appellant did not raise his second appellate issue, which asserts the trial court misinterpreted the MHPA, before the trial court and in his Rule 1925(b) statement. Therefore, Appellant's second issue is waived. *See* Pa.R.A.P. 302(a); *Linde, supra*.

- 3 -

examination and treatment of individuals; Section 7301 provides in relevant part:

### § 7301. Persons who may be subject to involuntary emergency examination and treatment

**(a)   Persons Subject.—**Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment.  A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

**(b)   Determination of Clear and Present Danger.—**(1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated.  If, however, the person has been found incompetent to be tried or has been acquitted by reason of lack of criminal responsibility on charges arising from conduct involving infliction of or attempt to inflict substantial bodily harm on another, such 30-day limitation shall not apply so long as an application for examination and treatment is filed within 30 days after the date of such determination or verdict.  In such case, a clear and present danger to others may be shown by establishing that the conduct charged in the criminal proceeding did occur, and that there is a reasonable probability that such conduct will be repeated.  For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.

(2)   Clear and present danger to himself shall be shown by establishing that within the past 30 days:

(i)  the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to

satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act….

\* \* \*

50 P.S. 7301(a), (b)(1)-(2)(i).  Section 7302 provides:

**§ 7302.  Involuntary emergency examination and treatment authorized by a physician—not to exceed one hundred twenty hours**

**(a) Application for Examination.**—Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

\* \* \*

(2) Emergency Examination Without a Warrant.— Upon personal observation of the conduct of a person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment, and physician or peace officer, or anyone authorized by the county administrator may take such person to an approved facility for an emergency examination.  Upon arrival, he shall make a written statement setting forth the grounds for believing the person to be in need of such examination.

**(b) Examination and Determination of Need for Emergency Treatment.**—A person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of section 301 and in need of immediate treatment.  If it is determined that the person is severely mentally disabled and in need of emergency

- 5 -

treatment, treatment shall be begun immediately. If the physician does not so find, or if at any time it appears there is no longer a need for immediate treatment, the person shall be discharged and returned to such place as he may reasonably direct. The physician shall make a record of the examination and his findings. In no event shall a person be accepted for involuntary emergency treatment if a previous application was granted for such treatment and the new application is not based on behavior occurring after the earlier application.

**(c) Notification of Rights at Emergency Examination.**—Upon arrival at the facility, the person shall be informed of the reasons for emergency examination and of his right to communicate immediately with others. He shall be given reasonable use of the telephone. He shall be requested to furnish the names of parties whom he may want notified of his custody and kept informed of his status. The county administrator or the director of the facility shall:

(1) give notice to such parties of the whereabouts and status of the person, how and when he may be contacted and visited, and how they may obtain information concerning him while he is in inpatient treatment; and

(2) take reasonable steps to assure that while the person is detained, the health and safety needs of any of his dependents are met, and that his personal property and the premises he occupies are secure.

**(d) Duration of Emergency Examination and Treatment.**—A person who is in treatment pursuant to this section shall be discharged whenever it is determined that he no longer is in need of treatment and in any event within 120 hours….

\* \* \*

50 P.S. § 7302(a)(2), (b)-(d) (internal footnote omitted).

Involuntary commitment under Section 7302 is proper "where there are 'reasonable grounds to believe a person is severely mentally disabled and in

need of immediate treatment.'" *In re Jacobs*, 15 A.3d 509, 510 (Pa.Super. 2011) (quoting *In re Hancock*, 719 A.2d 1053, 1055 (Pa.Super. 1998)). "[I]t is not sufficient to find only that the person is in need of mental health services. It must also be established that there is a reasonable probability of death, serious injury or serious physical debilitation to order commitment." *In re R.F.*, 914 A.2d 907, 913-14 (Pa.Super. 2006), *appeal denied*, 593 Pa. 741, 929 A.2d 1162 (2007) (citing *In re T.T.*, 875 A.2d 1123 (Pa.Super. 2005), *appeal denied*, 584 Pa. 702, 882 A.2d 1006 (2005)). "[E]xpungement of civil commitment records (be they generated in a hospital or court context) are required if they originated as a result of an illegal proceeding subsequently declared null and void[.]" *Id.* at 909 (citation and internal quotation marks omitted).

Additionally, "a trial court has broad discretion with regard to the admissibility of evidence, and is not required to exclude all evidence that may be detrimental to a party's case." *Schuenemann v. Dreemz, LLC*, 34 A.3d 94, 102 (Pa.Super. 2011). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or [unduly] prejudicial to the complaining party." *Ettinger v. Triangle-Pacific Corp.*, 799 A.2d 95, 110 (Pa.Super. 2002), *appeal denied,* 572 Pa. 742, 815 A.2d 1042 (2003). Pennsylvania Rule of Evidence 801 defines hearsay as follows:

> **Rule 801. Definitions That Apply to This Article**
>
> **(a) Statement.** "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the

person intended it as an assertion.

**(b)  Declarant.** "Declarant" means the person who made statement.

**(c)  Hearsay.** "Hearsay" means a statement that

(1)   the declarant does not make while testifying at the current trial or hearing; and

(2)   a party offers in evidence to prove the truth of the matter asserted in the statement.

\*      \*      \*

Pa.R.E. 801.  Generally, hearsay is inadmissible, except as provided by the rules of evidence, other Pennsylvania Supreme Court rules, or by statute. Pa.R.E. 802.

Pennsylvania Rule of Evidence 803(6) sets forth the business records exception to the hearsay rule, as follows:

> **Rule 803.  Exceptions to the Rule Against Hearsay— Regardless of Whether the Declarant Is Available as a Witness**
>
> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> \*      \*      \*
>
> **(6) Records of regularly conducted activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business," which term includes

business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 901(11) or (12) or with a statue permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate lack of trustworthiness.

Pa.R.E. 803(6). Importantly, Section 6104 of the Judicial Code governs the admissibility of records of government actions as follows:

### § 6104. Effect of official records generally

**(a) General rule.**—A copy of a record of governmental action or inaction authenticated as provided in section 6103 (relating to proof of official records) shall be admissible as evidence that the governmental action or inaction disclosed therein was in fact taken or omitted.

**(b) Existence of facts.**—A copy of a record authenticated as provided in section 6103 disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty or would have been so recorded had the facts existed shall be admissible as evidence of the existence or nonexistence of such facts, unless the sources of information or other circumstances indicate lack of trustworthiness.

42 Pa.C.S.A. § 6104. Section 6103 addresses the authentication of official records, in pertinent part, as follows:

### § 6103. Proof of official records

**(a) General rule.**—An official record kept within this

Commonwealth by any court, magisterial district judge or other government unit, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by that officer's deputy, and accompanied by a certificate that the officer has the custody. The certificate may be made by any public officer having a seal of office and having official duties with respect to the government unit in which the record is kept, authenticated by the seal of that office, or if there is no such officer, by:

(1) The Department of State, in the case of any Commonwealth agency.

(2) The clerk of the court of common pleas of the judicial district embracing any county in which the government unit has jurisdiction, in the case of any government unit other than a Commonwealth agency.

42 Pa.C.S.A. § 6103(a).

With these principles in mind, and after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Michael E. McCarthy, we conclude Appellant's remaining issues merit no relief. The trial court comprehensively discusses and properly disposes of Appellant's first, third, fourth, and fifth questions presented. (*See* Trial Court Opinion, dated August 13, 2018, at 3-9) (finding: **(1)** Allegheny County Department of Human Services' certification of involuntary mental health commitment form per Section 6103 of Judicial Code rendered form admissible as official record per Section 6104 of Judicial Code, despite Appellant's hearsay objection; **(3)** police officers who transported Appellant to hospital observed his conduct; Appellant failed to argue officers did not

observe him;[3] **(4-5)** process by which Appellant was involuntarily committed complied with requirements of MHPA Section 302; examining physician made timely and informed recommendation to commit Appellant per MHPA Section 302 based upon physician's observation Appellant had suffered paranoia, was severely mentally disabled, and required mental health treatment; psychologist Appellant retained, Paul Bernstein, Ph.D., noted in his August 2014 report Appellant's September 2013 behavior properly resulted in commitment per Section 302, and stated Appellant "exhibits mild psychological problems"; Appellant's treating counselor, Dr. Wade, testified that Appellant is currently "on a continuum of recovery," indicating Appellant had more problematic past condition). The record supports the trial court's decision and will not be disturbed on the grounds asserted. Accordingly, we affirm on the basis of the trial court opinion.

Order affirmed.

_____

[3] To the extent Appellant attempts to argue in his third issue that the police officers who transported him to the hospital improperly completed the Section 302 involuntary mental health commitment application, that claim is waived because Appellant failed to raise it before the trial court and in his Rule 1925(b) statement. *See* Pa.R.A.P. 302(a); ***Linde, supra***; ***Reeves, supra***.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/26/2019

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| **IN RE:** | **ORPHANS' COURT DIVISION** |
| PETITION OF M.R.C., | **No.** CC 638 of 2016 |
| Petitioner, | **OPINION** |
| vs. | FILED BY:<br>Michael E. McCarthy, Judge |
| ALLEGHENY COUNTY DEPARTMENT OF BEHAVIORAL HEALTH and THE PENNSYLVANIA STATE POLICE, | COPIES MAILED TO: |
| Respondents. | J. Michael McCormick, Esquire<br>314 Center Avenue<br>P.O. Box 64<br>Verona, PA 15147 |

J. Deron Gabriel, Esquire
Assistant County Solicitor
Allegheny County Law Department
445 Fort Pitt Boulevard, Suite 300
Pittsburgh, PA 15219

Andrew J. Lovette, Esquire
Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA 17110

FILED

18 AUG 13 PM 12:26

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

IN RE:                                        ORPHANS' COURT DIVISION

PETITION OF M.R.C.,                           No. CC 638 of 2016

    Petitioner,

        vs.

ALLEGHENY COUNTY DEPARTMENT
OF BEHAVIORAL HEALTH and
THE PENNSYLVANIA STATE POLICE,

    Respondents.


## OPINION

This matter came before the court pursuant to a pleading captioned "A Petition to Expunge the Records of an Involuntary Mental Health Proceeding". The case concerns an involuntary commitment pursuant to §7302 of the Pennsylvania Mental Health and Procedures Act ("MHPA")[1]. The Petitioner, M.R.C., asserts that the involuntary commitment, which occurred in September 2013, was unsupported by any diagnosis of a specific mental illness and that the record failed to establish any mental illness, as opposed to symptoms of withdrawal symptoms from alcohol dependency and abuse.

The petition was denied by order dated May 17, 2018. A timely notice of appeal followed. In response to an order pursuant to Pa R.A.P. No. 1925(b), counsel for M.R.C. timely submitted a concise statement of errors complained of on appeal.

---

[1] 50 PS. §7101, *et seq.*

2

The 302 commitment of M.R.C. occurred in September 2013. At that time, M.R.C. was approximately thirty-five (35) years old and resided with his wife and minor child in their suburban home. On September 18, 2013, M.R.C. had run out from that house asserting that "people were trying to kill him", apparently, ran into a nearby woods, where he suffered cuts to his hands and body. Eventually, M.R.C. was found on a roadway where he was attempting to stop drivers in order to enter their vehicles and escape from people whom he believed were trying to kill him. Police were called and, upon personal observation of the conduct of a person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment, the police eventually transported M.R.C. to Allegheny Valley Hospital.

A standard-form application for involuntary emergency examination and treatment pursuant to Section 302 of the MHPA was completed by one of the police officers who had observed and transported M.R.C. That officer described the conduct and of M.R.C., and based upon that observation as well as a discussion with the wife of M.R.C., the officer averred a belief that M.R.C. was "severely mentally disabled" and presented a clear and present danger to himself and others. The officer set forth his own description of events and check-marked a pre-printed portion of the standardized Application for Involuntary Examination and Treatment which asserted that M.R.C. had:

> acted in such manner as to evidence that he/she would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety and that there is reasonable probability that death, serious bodily injury or serious debilitation would ensue within 30 days unless adequate treatment were afforded under the [MHPA]

3

Following observation and treatment, the attending physician, Dr. Friedman, certified the necessity of an involuntary mental health commitment pursuant to MHPA Section 302. Thereafter, notification of an involuntary mental health commitment was issued within the seven-day period dictated by the Pennsylvania Uniform Firearms Act.

At the expungement hearing, and in the statement of matters complained of on appeal, M.R.C. objected that the records offered into evidence on behalf of the Pennsylvania State Police ("PSP") should be excluded as hearsay. In making that objection, M.R.C. overlooked the fact that the packet of documents offered by the PSP had been certified pursuant to 42 Pa. C.S. §6103. Under Section 6104 of the Judicial Code, 42 Pa. C.S. §6104, such a certification has the effect of rendering the documents admissible under the official records exception to the hearsay rule:

> **(a) General rule.**—A copy of a record of governmental action or inaction authenticated as provided in section 6103 (relating to proof of official records) shall be admissible as evidence that the governmental action or inaction disclosed therein was in fact taken or omitted.
>
> **(b) Existence of facts.**—A copy of a record authenticated in section 6103 disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty or would have been so recorded had the facts existed shall be admissible as evidence of the existence or nonexistence of such facts, unless the sources of information or other circumstances indicate lack of trustworthiness.

Having been certified by the custodian for the Allegheny County Department of Human Services to be true and correct copies of the originals, the documents proffered by the PSP were immune to the hearsay objection by M.R.C.

M.R.C. additionally objected, however, that the handwritten information entered in the Application for Emergency Examination and Treatment should be excluded as a statement made in contemplation of litigation. Because that application form explicitly cautions any signatory that "I understand that I may be required to testify at a court hearing concerning the information I give", M.R.C. reasons that any information that is provided will obviously be provided with a view toward litigation.

Statements that are provided in anticipation of litigation may be untrustworthy because they are calculated to advance the interest of the author rather than accurately and disinterestedly describe actual events. For that reason, the reliability such statements may be suspect and, if it appears that such a statement may be a self-serving narrative rather than an objective account of events, it may be excluded. However, a form which forewarns individuals that a consequence of providing information may be that he or she might later be called as a witness cannot be presumed, in itself, to provide an incentive to report events inaccurately. A pre-printed caution to witnesses that they may at some future point be called to testify merely advises them of the responsibility they are undertaking and that any facts should be set forth accurately and in detail at the present time to assist their recollection at a future point. That warning does not, in itself, create a concern that witnesses will be motivated to provide a false account of events.

In the second through fifth matters complained of on appeal, M.R.C. contends that an expungement should have been granted because the examining physician did not set forth a diagnosis of a specific mental illness and, in any event, the record fails to establish that M.R.C. was mentally ill. An attending emergency room physician merely confirms

5

an observation of behaviors or injuries that suggest a need for evaluation. The purpose served by retaining a patient whose unusual behaviors have resulted in transport to a hospital emergency room is to provide an opportunity for more thorough psychological evaluation. An emergency room physician merely confirms an observation of injuries or behaviors that suggest a need for such an evaluation. In this case, M.R.C. suffered a delirium episode which has since been attributed to alcohol withdrawal.

Moreover, a timely examination of M.R.C. occurred. The "Physician's Examination" segment which is Part VI of the Application for Involuntary Emergency Examination and Treatment indicates that an examination occurred within approximately thirty (30) minutes of the arrival of M.R.C. at Allegheny Valley Hospital. That examining physician noted M.R.C. to have been paranoid, but otherwise stable for inpatient psychiatric treatment and, further, check- marked that portion of the application which stated:

> The patient is severely mentally disabled and in need of treatment. He should be admitted to a facility designated by the County Administrator for a period of treatment not to exceed 120 hours.

Having been informed of the circumstances which brought M.R.C. to the emergency room, having observed the bruises and an abrasion consistent with the account of events that resulted in M.R.C. having been transported to the hospital, and having examined M.R.C., the examining physician made an informed recommendation for involuntary commitment pursuant to the MHPA.

A psychologist who was retained by M.R.C. opined that, based upon an examination conducted approximately a year after the involuntary commitment, M.R.C.

6

exhibited no diagnosable mental disorder, with the exception of alcohol dependence in remission. That August 2014 report also acknowledged, however, that "it may be reasonable to assume that [M.R.C.] exhibits mild psychological problems". As importantly, the report acknowledged that the account provided by M.R.C. of events leading to the 302 commitment indicated that M.R.C. "experienced a psychotic episode in which he developed perceptual distortions (auditory and visual hallucinations and delusions (false beliefs)".[2] The Petitioner's own expert report appears, therefore, to acknowledge behavior that had properly resulted in a recommendation for a 302 commitment. In fact, the August 2014 report does not appear to directly challenge the propriety of the involuntary commitment. The report opines, instead, that, *subsequent* to that commitment, M.R.C. had progressed to the point that an expungement might be appropriate subject, however, to scheduled screenings for alcohol use and a weekly outpatient "psychotherapeutic relationship" with a licensed mental health provider.

Similarly, the testimony and report of another psychologist who testified on behalf of M.R.C., opined that M.R.C. is presently "on a continuum of recovery." [3] Of course, such testimony concedes a more problematic past condition. Moreover, the witness conceded that he is not qualified to assess whether or not M.R.C. suffers from a severe mental illness.

In the sixth matter complained of on appeal, M.R.C. asserts that an expungement must be allowed because a form MH-783 was not used and completed and, therefore,

---

[2] Petitioner Exhibit A; Report of Psychological Evaluation by Paul Bernstein, Ph. D In fact, that expert had refused to participate in an evaluation for purposes of supporting expungement petition until M.R.C. had demonstrated more than a year of sobriety.

[3] N.T. 12, 13

7

there had been no compliance with §7112 of the MHPA. The record indicates, however, that the rights described in Form MH 783-A were explained to M.R.C. and were understood by him at the time.[4]

In the seventh through ninth matters complained of on appeal, M.R.C. contends generally that this court erred when it failed to hold that "in addition to the above specified reasons [,] other mandatory procedural safeguards and due process protections of the MHPA were not complied with and/or were violated". M.R.C. was directed to file a statement of errors complained of on appeal consistent with Pa. R.A.P. 1925(b). That direction is given to a party when a court "desires clarification of the errors complained of". An assertion that the court failed to consider "other matters" or, in this case, failed to hold that "other safeguards and protections" had been violated provides no clarification to the court and is not an adequate response to a 1925(b) directive. For that reason, this opinion does not specifically address Nos. 7, 8, 9 and 11 of the matters complained of by M.R.C.

M.R.C. complains at No. 10 that the court erred when it failed to grant M.R.C. requested relief from the prohibition to possess firearms according to 18 Pa.C.S.§6105. Notwithstanding that a request for expungement of a 302 commitment is not granted, Section 6105(f) (1) of the Uniform Firearms Act allows reinstatement of firearms rights upon a finding that a petitioner can possess a firearm without risk of harm to himself or another. 18 Pa.C.S.A. § 6105(f) (1). The record in this case does not establish the

---

[4] Application for Involuntary Emergency Examination and Treatment, at Part IV. To the extent that M.R.C. also questions the adequacy of a warrant, the record suggests that the officers who transported M.R.C. had observed his conduct. M.R.C. did not argue otherwise.

absence of such a risk. M.R.C. has not demonstrated that, he has advanced to the point his possession and use of a firearm would be without a risk of harm attributable to mental health concerns that had resulted in his 302 commitment. Although Dr. Wade, an expert witness for M.R.C., opined on the stand that, within a reasonable degree of certainty, M.R.C. could possess a firearm without risk to himself or others, the testimony of that witness had described the current status of M.R.C. as doing "fairly well" and progressing on a continuum. Additionally, that witness, conceding that he does not have the standing to "officially diagnose", has assessed the erratic past behaviors of M.R.C. as having been solely substance – abuse driven.[5] Because the witness lacks the standing to diagnose and has couched his own opinion as to the well-being of M.R.C. in terms of "progressing" and doing "fairly well", the court is chary to accept the opinion of the witness that the possession of a firearm by M.R.C. would, in fact, be without a risk of harm.

By the Court:

Date: ___Aug 13___, 2018

Michael E. McCarthy                J

---

[5] N.T. 20

9